**In re Anonymous No. 99 D.B. 90**

Disciplinary Board Docket No. 99 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member,* March 31, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On September 4, 1990, the Office of Disciplinary Counsel filed a petition for discipline of respondent, docketed at No. 99 D.B. 90. The petition, which contained two charges, alleged that respondent acted in an unprofessional manner when he filed groundless, frivolous lawsuits against his former employer, a profit sharing plan, several banks, and numerous other parties.

Respondent filed his answer on October 11, 1990. Respondent did not contest the facts averred by petitioner, and admitted he had engaged in professional misconduct. Respondent raised the issue of his diminished capacity and impaired judgment, and requested that the petition for discipline be dismissed due to the fact he suffered from untreated bi-polar affective disorder at the time in question.

The parties entered into a detailed stipulation in which they agreed to the underlying facts, Disciplinary Rule violations, and respondent's diminished mental capacity during the time in question because of his then untreated bi-polar affective disorder. Both petitioner and respondent suggested that respondent be suspended from the practice of law for a period of one year and one day, that the supension be stayed, and that respondent be placed on probation with conditions, for a period of three years.

The matter was referred to Hearing Committee [　], which was chaired by [　], Esquire, and included [　], Esquire. The committee held a brief hearing on January 18, 1991. On May 13, 1991, Hearing Committee [　] filed its report and recommended that respondent be suspended from the practice of law for a period of one year and one day, that the suspension be stayed, and that respondent be placed on probation with conditions, for a period of three years.

Neither party filed a brief on exceptions to the Hearing Committee report.

The matter was adjudicated at the May 1991 meeting of the Disciplinary Board.

## FINDINGS OF FACT

The board adopts the detailed factual stipulation entered into by the parties.

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [　], Esquire, was born in 1941, admitted to practice law in the Commonwealth of Pennsylvania in 1969, and resides at [　].

## CHARGE I

(3) Respondent had been employed for about five years with a law firm eventually known as [　] (hereinafter, the corporation) and was a shareholder in it when, on November 4, 1987, the corporation terminated respondent's employment, effective January 3, 1988.

(4)  On about November 19, 1987, respondent made known to the corporation that he desired immediate payment to him for his interest in the corporation's employee profit sharing plan and trust.

(a) Attorney [A] was a director of the corporation and a trustee of the plan.

(b) [A] and other plan agents then advised respondent that his claim was premature, and would not be timely until at least the January 3, 1988, effective date of termination of his employment.

(5)  Under respondent's employment arrangement, he was entitled to payment of his stated salary only on a pro-rata basis with other lawyers, in accordance with the availability of funds.

(a) Respondent knew on November 4, 1987, that it had accordingly been determined that the corporation would not immediately pay an accrued salary deficit it yet owed him.

(b) In about mid-December 1987, respondent made demand that all such unpaid salary be immediately paid to him, which was denied.

(c) Thus, both respondent's claim as to salary and his claim as to his interest under the plan were then the subject of bona fide dispute, at least as to the time when payment might be due him.

(d) Respondent then proceeded to file a number of bankruptcy and other legal actions affecting the corporation, [A], and the plan.

(6)  On December 18, 1987, respondent filed in the U.S. Bankruptcy Court ([    ], Pa.) a motion to permit him to file a "late" claim for attorney's fees in a case (No. [    ]) involving [B] Inc., a reorganization debtor.

(a) In April of 1983, the court had authorized [B] to employ respondent and his employer law firm (a predecessor to the corporation) as special counsel, in an antitrust action in which it was plaintiff.

(b) Respondent's employment contracts with that firm and the successor law firms limited his compensation to a salary, and he had no independent entitlement to fees earned by or for the firm.

(c) Nevertheless, respondent set out in his motion a personal claim for over 1,200 hours of work (at $150/hour), or a total of about $190,000.

(7) On December 22, 1987, respondent filed as the only petitioning creditor an involuntary Chapter 7 petition against the corporation (at Bankruptcy No. [    ]), in which he claimed that its debts included $190,000 owed him for work on the [B] case, as well as his unpaid salary (claimed to be about $33,000) and his interest (claimed to be about $32,900) under the plan.

(a) On January 4, 1988, respondent filed an "amendment to petition changing it to a Chapter 11."

(b) On January 7, 1988, respondent filed an "amendment to petition changing it to a Chapter 7."

(8) On December 22, 1987, respondent had also filed as the only petitioning creditor an involuntary Chapter 11 petition against [A] (at Bankruptcy No. [    ]), in which he alleged that [A] was indebted to him as a personal guarantor of both respondent's unpaid salary and his interest under the plan.

(a) On January 11, 1988, respondent filed an amended petition which deleted the claim against [A] for payment from the plan.

(b) On January 26, 1988, respondent filed a motion to consolidate the cases he had filed against the corporation and [A] with the original [B] bankruptcy case (at No. [    ]).

(9) On January 26, 1988, respondent individually filed an involuntary Chapter 7 petition against the plan (at Bankruptcy No. [    ]), claiming that it was indebted to him for his vested interest under the plan.

(a) It appeared to the Bankruptcy Court that it did not have jurisdiction of actions brought to enforce pro-

visions of such a plan, under provisions of the Employees Retirement Income Security Act, 29 U.S.C. §1132(e)(1).

(b) Therefore, following a conciliation conference and hearing on February 9, as to all three involuntary petitions, upon motion for protection of the plan against unwarranted attorney fees, costs and damages, the court ordered that respondent post a bond of $10,000 (10 percent cash) by February 12.

(c) At the time of that conference and hearing, the corporation asserted that funds had recently become available for the purpose, and tendered payment to respondent of about $23,000, which he accepted as the net amount of all salary owed to him.

(d) Despite his receipt of those funds then, respondent never posted the $10,000 bond ordered in the plan case, and he took no action to dismiss or withdraw his petition against the plan.

(10) On February 5, 1988, upon motions for protective orders, the Bankruptcy Court had stayed respondent's proposed depositions and, on February 9, the court restricted his discovery as to topical scope, to a total number of five deponents, and as to time for completion.

(a) On February 9, respondent filed a suit in U.S. District Court (at No. [    ]) in which the corporation and [A] were named as defendants, among others, and he immediately gave notice of intention to depose at least 14 non-party individuals.

(b) On February 10, respondent filed a suit in District Court (at No. [    ]), in which [A] was named as a defendant, among others.

(c) On February 11, at a meeting to take depositions scheduled in the bankruptcy proceedings, including that of [C], respondent falsely misrepresented to opposing counsel that he had canceled the deposition of [C], and he then went elsewhere and conducted an ex parte deposition of [C] that same day.

(d) On February 12, upon motions for protective orders, the District Court stayed the discovery respondent was attempting in the suit at No. [    ], pending further order of court.

(11) Respondent's filing on February 9 and 10, 1988, of the two civil actions in the District Court at No. [    ] and No. [    ], which included [A] and the corporation as defendants, were in violation of the automatic stay provision of bankruptcy law as to them.

(a) No. [    ] was brought against the corporation, [A], attorney [D] (of [    ]), and [E], a former governor of [    ].

(i) Respondent alleged therein that on several occasions and for several years, the defendants had made false statements that induced him to work for law firms in [    ] and [    ] on allegedly sham antitrust litigation, and that the defendants conspired with the U.S. government, to monopolize the market for illicit narcotic drugs.

(ii) Respondent asserted that these allegations made out violations of antitrust laws and the Racketeering Influenced Corrupt Organizations Act.

(b) In No. [    ], very similar allegations were made against some of the same defendants as in No. [    ], but added as defendants, among others, were the state of [    ], U.S. Attorney General [F], President [G], and then Vice-President [H], as to which parties there was therein no readily perceptible specific basis in fact or law for their inclusion as defendants.

(c) On February 17, the District Court stayed all discovery which respondent was attempting in the suit at No. [    ].

(12) On February 12, respondent filed identical adversary proceedings in each of the three bankruptcy actions, therein making allegations similar to those contained in the two complaints he had earlier filed in the District Court, and he then used those allegations as the basis for further litigation action by him.

(a) The same day, respondent filed a petition to "withdraw the reference" of all three involuntary bankruptcy petitions from the Bankruptcy Court, and also filed with the District Court (at No. [    ]) a petition for removal of them to it, on the basis that they involved "political questions" not within bankruptcy jurisdiction.

(b) On February 17, respondent filed on behalf of his wife and himself an "amended complaint" at No. [    ], naming as defendants the corporation, [A], and eight others, with allegations repeating those he made in the two suits he had earlier filed in District Court at Nos. [    ] and [    ], against several of the same defendants.

(c) On February 17, 1988, the District Court entered an order at No. [    ], remanding the case and all three bankruptcy actions back to the Bankruptcy Court, finding that respondent's petition for removal had been in the nature of an appeal and that, at that stage, there was no order from which respondent could appeal.

(13) After a trial on February 18, 1988, the Bankruptcy Court orally ordered dismissal of all three involuntary petitions, including respondent's related motions and the adversary proceedings, as confirmed in a memorandum opinion and order dated February 24, 1988.

(a) The court held that respondent had failed to establish the requisite elements set out in the Bankruptcy Code at 11 U.S.C. §303(b) and (h), and he be the holder of a claim "that is not contingent or the subject of a bona fide dispute," and show that the alleged debtors were generally not paying their debts as they became due, as respondent had alleged in each of the three petitions.

(b) In the action as to the corporations, at No. [    ]:

(i) Respondent had presented no evidence that the corporation was generally not paying its debts as they became due.

(ii) Respondent presented no evidence to refute the corporation's pleading that payment of his salary was

due only on a pro-rata basis in accordance with the availability of funds.

(iii) The court determined that the salary claim was the subject of a "bona fide dispute" and that the matter of the salary had been settled on February 9.

(iv) Provisions in the basic plan document showed that the corporation was in no way liable for any plan debt.

(c) In the action as to [A], at No. [     ]:

(i) Respondent presented no evidence that [A] was generally not paying his debts as they became due.

(ii) Respondent presented no evidence in support of his claim that [A] had provided a personal guarantee as to the unpaid salary, or in relation to respondent's entitlement under the plan.

(iii) The court determined that respondent's claim for salary was in any event the subject of a "bona fide dispute," and that [A] had no liability to respondent under the plan.

(d) In the action as to the plan, at No. [     ]:

(i) Respondent presented no evidence that the plan was generally not paying its debts as they became due.

(ii) The court found that, in fact, the plan had no debts.

(iii) The court determined that respondent's claim against the plan itself was premature, yet contingent, and the subject of a "bona fide dispute," given the express provisions of plan documents.

(iv) The court further found that respondent did not have a claim against the plan which was cognizable under section 303 of the Bankruptcy Code, because of ERISA provisions, and that he had failed to post the $10,000 bond ordered.

(14) Following dismissal of all his bankruptcy actions, on February 23, 1988, respondent voluntarily dismissed the two District Court actions filed at Nos. [     ] and [     ].

(a) However, on February 25 (the day after the written Bankruptcy Court dismissal order was filed), respondent

filed in District Court a motion for relief from judgment and for a stay in the civil action at No. [    ].

(b) On February 26, respondent filed another "amended complaint" in that action, naming only himself as plaintiff and only the corporation as defendant, repeating the allegations found in Count I of the earlier amended complaint, and filed an "entry of judgment and affidavit" against the corporation.

(c) On the asserted basis of "default having been entered," respondent had praeciped judgment against the corporation for the amount of $339,380, plus costs of $5,674.

(d) On March 10, upon motion of the opposing parties, the District Court denied respondent's motion for relief and ordered the entry of default judgment stricken, as having no reasonable basis in law or fact.

(e) In a memorandum opinion and order of that date, the court found that respondent had engaged in "abuse of the judicial system," and entered preclusive orders.

(15) Meanwhile, on March 3 and 7, 1988, respondent had separately filed in each of the three actions in Bankruptcy Court a notice of appeal and a motion for leave to appeal, as to the February 24 order dismissing the involuntary petitions and related actions.

(a) However, respondent thereafter failed to designate issues and record, as required for such appeals by Bankruptcy Rule 8006, and opposing counsel filed a motion to quash on that basis, on March 14.

(b) On March 15, respondent filed a motion for voluntary dismissal of the appeals in the actions originally brought against the corporation and [A], and those appeals were thus ended by Bankruptcy Court orders dated March 16, 1988.

(c) As to the plan case, in which the earliest appeal notice had been filed and sent to District Court, on March 17, 1988, the District Court issued an order granting the motion of the alleged debtor to quash the appeal.

(16) The corporation, the plan and [A] pursued action against respondent for sanctions, pursuant to Bankruptcy Rule 9011 and 11 U.S.C. §3303(i). In a memorandum opinion issued July 7, 1988, the Bankruptcy Court held that:

(a) Testimony had established that respondent filed the three involuntary bankruptcy petitions with knowledge that there was no basis in law or in fact to do so.

(b) Papers respondent filed were not well-grounded in fact or warranted by existing law, and he had made no arguments to modify, extend or reverse existing law.

(c) Respondent's violation of applicable rules relating to pleading and practice, as well as the multiplicity of the filings he made, all evidenced to the court a neglect of his duty to investigate pertinent facts and relevant law.

(d) Respondent's attempt to recover attorney's fees in the unrelated [B] bankruptcy case was absent compliance with the elementary premise of bankruptcy law that counsel must file a fee petition and have fees approved by the court, before payment becomes due.

(e) Respondent had violated the court's orders and rules in several respects, in that he had filed several notices of deposition extending beyond the period set, included more witnesses than allowed without leave of court, deceitfully conducted an ex parte deposition for the purpose of conducting discovery beyond the limited issues set, and failed to post the bond ordered in the plan case.

(f) Respondent had filed his various actions in the District Court in an effort to defeat Bankruptcy Court orders as to discovery and posting the bond in the plan case.

(g) Respondent had filed such a "storm of pleadings and amendments" as to make it virtually impossible for the parties and for the Bankruptcy Court to determine the nature of the allegations made and against which alleged debtor they were directed.

(h) Respondent's various amendments were done in an effort to delay adjudication and becloud the real issues, and to harass the alleged debtors by increasing the costs to them of the litigation, with the motive to "bludgeon" them "into making payments not due" him.

(17) In regard to the action for sanctions, the Bankruptcy Court found that respondent had acted in willful disregard of the truth, had willfully disobeyed court orders, had acted in bad faith, and that his conduct was "outrageous."

(a) Thereupon, by orders dated July 7 and 28, 1988, the Bankruptcy Court entered judgment for $38,612 against respondent, being about $21,600 as sanctions for counsel fees and costs and about $17,000 as compensatory damages to the corporation.

(b) These amounts represented actual, determinable damages in the matter, as the court did not award punitive damages.

## CHARGE II

(18) On about July 6, 1988, respondent began employment with the law firm of [I] of [    ], Pennsylvania, based on oral agreement with attorney [J], the principal of the firm, that his compensation was to be on a salary basis, plus a percentage of fees realized from work he might bring in, to be determined on an ad hoc basis.

(19) On July 21, 1988, respondent wrote a two-page handwritten memorandum which he left in [J's] office, in which he indicated that he intended that the firm file a case involving antitrust, securities, fraud, "RICO," and tax fraud charges against various banks.

(20) The memo showed that respondent intended himself to be the plaintiff, basing his standing upon his payment of the [    ] Restaurant and Hotel Tax in 1988, and that he projected as a benefit the "attorney's fees and all costs pursuant to 15 U.S.C. §16."

(21) After reading the memo on July 21, [J] discharged respondent that same day, effective immediately, and there was no agreement for any continuing connection between him and the firm, particularly as to any antitrust suit.

(22) [J] then received a letter of resignation from respondent, dated July 30, 1988, wherein he advised [J] that he considered all agreements between himself and the firm to be terminated, and did not "wish my name to be associated" with the firm in the practice of law.

(23) That same letter further related that respondent had filed an action in the U.S. District Court ([   ], Pa.) "on behalf of the firm with myself as plaintiff."

(24) On July 29, 1988, respondent had actually initiated such a suit (at No. [   ]), by filing a complaint captioned *[Respondent] v. [K] Corp., [L], the [M] Co. Inc., the Bank of [N], and the Government of [O], and the [P]*, which prayed for an injunction and damages, as well as attorney's fees and costs.

(25) The said complaint was signed by respondent and indicated that he was acting for the firm of [I], and three addresses he listed were his residence and two separate addresses of the firm.

(26) As of the time he had filed the same, respondent had actually been discharged from his employment with [I] for over a week, and he had no authority to commit the firm to such representation of himself as was reflected on the complaint.

(27) In a letter to the clerk of the District Court dated August 10, 1988, respondent represented that he had filed the suit on behalf of himself as plaintiff and as a lawyer with [I].

(28) Respondent further related in that letter that he had resigned from the firm subsequent to the filing of the complaint, and further related that his resignation had been based on the condition that the firm would continue

to represent him in the case, both of which representations were false in fact.

(29) In that letter, respondent also advised that all notices, responsive pleadings and other case papers of any kind should be sent to [J].

(30) The complaint respondent had filed alleged violations of sections 1 and 2 of the Sherman Antitrust Act, sections 7 and 8 of the Clayton Antitrust Act, section 10 of the Securities Exchange Act of 1934, section 14 of the Securities Act of 1933 (erroneously referred to therein as the Securities *Exchange* Act of 1933), and the Racketeering Influenced Corrupt Organizations Act, and prayed for damages, attorney's fees and costs.

(31) Respondent based his standing as plaintiff in the case on the fact that he was a "downstream consumer of consumer credit," by virtue of his possession of an American Express gold card issued by [Q] Corp., and he pleaded damage as having arisen from having to pay arbitrarily high, fixed prices for consumer credit due to the acts of defendants and others who were "conspiring to monopolize the market for consumer credit and deposits."

(32) The complaint asserted that venue was properly in the [   ] District of Pennsylvania based on "issuance of American Express credit cards" and the extension of consumer credit by defendants there, but the complaint failed to assert that any of the named defendants had significant business interests in that district.

(33) On August 22, 1988, counsel for [K] Corp. filed a motion to dismiss the complaint for failure to state a claim, and for sanctions under Rule 11, Fed.R.Civ.P., with an accompanying memorandum of law.

(34) The motion asserted that plaintiff lacked standing, that the claims were pleaded deficiently, and that respondent had commenced a "patently frivolous action," citing factual and legal support for those conclusions in the accompanying memorandum.

(35) In fact, as asserted in that motion and memorandum, the complaint respondent had filed fell short of minimal pleading standards for the types of action he was attempting to pursue in the suit, in regard to the following:

(a) Respondent failed to meet the requirements for standing to be a plaintiff in antitrust, securities and RICO law action, in that, among other reasons, he did not allege that he was a direct consumer of the products involved, and alleged no "commercial injury," or direct loss, injury or damage to himself.

(b) Respondent's complaint asserted claims which are not actionable under federal law absent essential allegations of fact, which were not made, in regard to the following:

(i) The complaint lacked specificity as to four elements required by law to sufficiently state a claim under antitrust laws.

(ii) The complaint failed to state with particularity the circumstances constituting alleged securities fraud.

(iii) The complaint failed to allege specific elements required by law to sufficiently state any alleged RICO violation.

(c) The assertions made in the complaint indicated that respondent made no pre-filing investigation of facts and law such as required by Rule 11, Fed.R.Civ.P.

(36) Attorney [R], as counsel for the government of [O], sent a letter to the clerk of District Court dated August 12, 1988, noting that a summons had been directed to that defendant which, under the Foreign Immunities Act of 1976, had 60 days within which to file a responsive pleading, and he asserted therein that the government of [O] would require that full time to prepare an answer, noting that [O] would claim jurisdictional immunity.

(37) On August 15, 1988, respondent sent attorney [J] a letter discussing the case he had filed, suggesting an alternate theory of fraud by the [M], and outlining

the basis for a $2 million recovery he projected, to be split between himself and [I].

(38) On August 17, 1988, respondent sent another letter to [J] regarding the case, relating alternate calculation of the recovery he expected.

(39) In another letter respondent sent to [J], dated August 19, 1988, respondent discussed aspects of service of the defendants he had arranged, and his perception that an answer by all defendants (including those overseas) would be due within 20 days after service, or by about August 23, 1988, at which time, if answers were not filed, he wanted [J] to take default judgments.

(40) On August 24, 1988, attorney [J] sent a letter to U.S. District Court Judge [S], disclaiming any connection with the suit, and also sent a letter to respondent, enclosing a copy of the letter to Judge [S], together with all correspondence regarding the case [J] had received up to that point.

(41) Respondent sent attorney [J] a letter dated August 26, 1988, in which he indicated that the filing of the suit was "pursuant to our agreement," that "upon my resignation from [I] on July 31, 1988," he had tendered the role of plaintiff's counsel to [J], but that he would voluntarily dismiss the case on September 2, 1988, unless he heard that [J] was going to take over as plaintiff's counsel.

(42) On August 26, 1988, respondent sent a letter to the attorney general of the United States, in which he represented that he had filed the suit on July 29 "as a pro se plaintiff and a member of the firm of [I]," that he had only later "resigned from that firm on July 31, 1988," and that he would be forced to enter a voluntary dismissal on September 2, 1988, for lack of available counsel to represent him.

(43) On September 1, 1988, there was a voluntary dismissal entered in the suit under Rule 41(a)(1), pursuant to a letter which respondent had sent to the court clerk,

accompanied by a dismissal document and a certificate of service which was dated August 29, 1988.

## ADDITIONAL FACTS AS TO CHARGES I AND II

(44) By his conduct as set forth in the foregoing paragraphs 3 through 17, respondent caused unwarranted damage to parties and non-parties to the litigation, beyond those matters designated by the Bankruptcy Court as the basis for award of judgment as sanctions for counsel fees and costs and compensatory damages to the corporation.

(a) There was newspaper publicity and other public notoriety in the [    ] area regarding the filing by respondent, whose name was part of that of the law firm, of involuntary bankruptcy action against the corporation and [A].

(b) As a consequence thereof, the corporation, [A], and attorney [T], the other principal involved in the law firm and its name, suffered a diminution of reputation which caused them actual detriment in professional, business, financial and other affairs.

(c) Also as a consequence thereof, [A] and attorney [T] suffered personal embarrassment, humiliation and emotional distress, which effects extended to their families and close professional associates as well.

(d) In the course of the litigation, respondent's conduct caused various other named parties and non-parties to expend time and money in requesting protective orders and otherwise defending themselves against respondent's charges and procedures, which were unsupported in fact, unjustified under the law or rules, and/or violative of court orders and bankruptcy laws, rules and procedure.

(e) As of October 2, 1990, both the corporation's judgment against respondent arising out of the bankruptcy litigation and respondent's claim against the plan were resolved by concurrent settlement.

(45) By his conduct, as set forth in the foregoing paragraphs 19 through 44, respondent caused unwarranted damage to parties and non-parties to the federal litigation he had initiated.

(a) There was no newspaper publicity as to the matter, and little notoriety of it in the legal profession, and neither the law firm of [I], nor its principal, attorney [J], were caused any direct financial loss.

(i) However, attorney [J] and his wife and law partner, attorney [U], were required by the circumstances to spend considerable time on document review, research, letters and telephone conversations necessary to disclaiming any responsibility of the firm, as to the suit respondent had filed as if he were then authorized to act for the firm.

(ii) Therein, attorney [J] also suffered personal embarrassment and humiliation, in that he was required to acknowledge that he had in fact hired and previously employed respondent, albeit for only a short period of time.

(b) [K] Corp. and the government of [O] were caused to bear the expense of employment of counsel to represent them as parties defendant, in the particulars described in paragraphs 33 through 36 of the foregoing.

(46) At the time of the events related in all of the foregoing, respondent was suffering from a mental condition which produced in him a state of diminished mental capacity, and his conduct therein had a direct and substantial causal relationship to that diminished mental capacity.

## CONCLUSIONS OF LAW

### *CHARGE I*

Respondent's conduct as outlined in Charge I violated the following Disciplinary Rules:

(1) D.R. 1-102(A)(4)—dealing with a lawyer engaging in conduct involving inter alia deceit or misrepresentation;

(2) D.R. 1-102(A)(5)—dealing with a lawyer engaging in conduct that is prejudicial to the administration of justice;

(3) D.R. 7-102(A)(1)—prohibiting a lawyer from filing a suit, conducting a defense, delaying a trial, or taking other action when he knows or it is obvious that such action would serve merely to harass or maliciously injure another;

(4) D.R. 7-102(A)(2)—prohibiting a lawyer from knowingly advancing a claim or defense that is unwarranted under existing law, unless the same is supported by good faith argument for an extension, modification or reversal of existing law;

(5) D.R. 7-106(A)—prohibiting a lawyer from disregarding a standing rule or ruling of a tribunal made in the course of a proceeding, except for good faith steps to test the validity of such a rule or ruling; and

(6) D.R. 7-106(C)(7)—prohibiting a lawyer from intentionally or habitually violating any established rule of procedure or evidence.

## CHARGE II

Respondent's conduct, as alleged in Charge II of the petition for discipline, violated the following Rules of Professional Conduct:

(1) RPC 3.1—A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law;... and

(2) RPC 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving ... deceit or misrepresentation.

## DISCUSSION

The instant proceedings are based on two charges of professional misconduct stemming from respondent's filing of groundless, frivolous lawsuits against his former employer, profit sharing plan, several banks, and various other parties. Respondent has admitted that the facts occurred as alleged in the petition for discipline, and that his conduct violated the Disciplinary and Professional Conduct Rules as charged.

The preliminary issue before the Disciplinary Board is whether the evidence supports a finding of professional misconduct. Petitioner has presented, and respondent has stipulated, that judiciary testimony would buttress the opinions of the civil and bankruptcy judges which dismissed respondent's various lawsuits as frivolous and groundless. The board is satisfied that the opinions of these learned judges attest to the lack of merit of the lawsuits filed by respondent. The board is further satisfied, based on the evidence and respondent's own admissions, that his malicious pursuit of these unwarranted causes of action was prejudicial to the administration of justice, and in violation of the Rules as charged.

The next question is, therefore, the appropriate discipline to be imposed in light of these transgressions. In his answer to the petition for discipline, respondent raised the issue of his mental competence at the time the acts in question occurred. It is agreed by the parties that respondent was suffering from untreated bi-polar affective disorder at the time of his misconduct. The issue before the Disciplinary Board is whether the evidence demonstrates a causal connection between respondent's misconduct and his psychological impairment.

The standard for considering psychiatric infirmity as a mitigating factor in the dispositional phase of a dis-

ciplinary proceeding was enunciated in *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). The *Braun* court stated that the "primary question is whether the record supports the finding that respondent's psychiatric condition ... was a factor in causing his admitted egregious misconduct." As long as a causal connection between respondent's ailment and his misconduct is established by expert testimony, the existence of a psychiatric disorder at the time of misconduct is a mitigating factor when discipline is imposed. *Id.*

On January 4, 1991, [V], M.D., a board-certified psychiatrist whose credentials establish his competence in the field of psychiatry, wrote to Senior Disciplinary Counsel [ ] that it was his "opinion that the behavior that led to the two sets of charges against [respondent] was a result of his diminished capacity to conform his behavior to the standards of his profession." (Pet. Ex. 6 at 2). The opinion of Dr. [V], coupled with the extensive medical information outlining respondent's disease and treatment, prove that his misconduct was the result of diminished mental capacity brought on by bi-polar affective disorder, and that respondent's affliction should mitigate the measure of discipline imposed upon him.

The appropriate disciplinary sanction will protect both the public and the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 526, 526 A.2d 1180 (1987). Respondent must be disciplined for the infractions he himself has acknowledged. The interests of the public and the bar dictate that where an attorney abuses the judicial system, and causes harm to innocent parties, that person must be reprimanded for his misconduct. The suspension of respondent from the practice of law for a period of one year and one day will recognize the seriousness of his actions, and ensure that the public and the bar are both adequately protected.

However, although respondent's conduct warrants discipline, *Braun* directs us to consider his psychiatric con-

dition in mitigation of the final disposition of his case. The staying of the period of suspension, coupled with the placement of respondent on probation with conditions for a period of three years, will satisfy our goal of imposing a fair measure of discipline under the circumstances. Section 89.291 of the Disciplinary Board Rules. We note that respondent's medical evidence demonstrates his continued participation in a treatment program for the management of his disorder, and that treating specialists have opined that as long as respondent cooperates with his rehabilitation, he is able to practice law.

The board therefore concludes that the specialized probation suggested by both parties is the correct discipline in this case. Probation will enable respondent to continue in the legal field while under the supervision of a monitor who will provide assurance that the interests of the public and bar remain adequately protected.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that [respondent], be suspended from the practice of law for a period of one year and one day, that the suspension be stayed, and that respondent be placed on probation for a period of three years and until probation is terminated, subject to the following conditions:

(1) Respondent shall continue treatment for mental health purposes with [W], M.D., or another physician qualified as a psychiatrist, who is to direct and supervise respondent's activities therein.

(2) Respondent shall cooperate with directions of the psychiatrist supervising his treatment, take medications as prescribed and engage in therapy and counselling sessions as directed.

(3) Respondent shall cause the psychiatrist supervising his treatment to make written reports directed to the Office of the Secretary, not less than semi-annually, as to the identity and dosage of medications being currently prescribed, the nature and frequency of therapy sessions engaged in since any prior report and the identity of the health services agency or agent providing the same, and an assessment of respondent's current mental condition at that time, in regard to his mental fitness to engage in the practice of law.

(4) Respondent shall immediately authorize and direct Dr. [W], and any substitute or successor supervising psychiatrist, to immediately furnish a written report of facts and circumstances to the Office of the Secretary at any time when, in the estimation of the supervising psychiatrist, respondent's behavior or material failure to conduct himself in cooperation with any aspect of his prescribed treatment regimen indicates that he is, or may be in jeopardy of shortly becoming, mentally unfit to engage in the practice of law.

(5) If, for any reason, respondent severs his present relationship with [W], M.D., he shall immediately make written report to the Office of the Secretary of that fact and the circumstances causing the same, together with the identification and location of another physician qualified as a psychiatrist who has been fully informed of the terms of this probation and has agreed to serve as a successor supervising psychiatrist in accordance with the same.

(6) Respondent shall furnish, at any time it may reasonably be requested, his written authorization for any health care agency or agent to furnish to the Office of the Secretary complete records of and information as to any mental health or underlying medical care services which may have been provided respondent.

(7) At the conclusion of the prescribed period of probation, respondent shall apply for termination of probation, in accordance with section 89.294, Disciplinary Board Rules.

The board further recommends that respondent be ordered to pay the expenses of investigating and prosecuting this matter pursuant to Rule 208(g)(1), Pa.R.D.E.

Mr. Paris recused himself.

Messrs. Eckell, Hill, Leonard and Sloane did not participate in the adjudication.

## ORDER

And now, March 31, 1992, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated July 22, 1991, are approved and it is ordered, that [respondent] be suspended from the practice of law for a period of one year and one day, that the suspension be stayed, and that respondent be placed on probation for a period of three years, subject to the following conditions:

(1) Respondent shall continue treatment for mental health purposes with [W], M.D., or another physician qualified as a psychiatrist, who is to direct and supervise respondent's activities therein.

(2) Respondent shall cooperate with directions of the psychiatrist supervising his treatment, take medications as prescribed and engage in therapy and counselling sessions as directed.

(3) Respondent shall cause the psychiatrist supervising his treatment to make written reports directed to the Office of the Secretary, not less than semi-annually, as to the identity and dosage of medications being currently prescribed, the nature and frequency of therapy sessions en-

gaged in since any prior report and the identity of the health services agency or agent providing the same, and an assessment of respondent's current mental condition at that time, in regard to his mental fitness to engage in the practice of law.

(4) Respondent shall immediately authorize and re-direct Dr. [W], and any substitute or successor supervising psychiatrist, to immediately furnish a written report of facts and circumstances to the Office of the Secretary at any time when, in the estimation of the supervising psychiatrist, respondent's behavior or material failure to conduct himself in cooperation with any aspect of his prescribed treatment regimen indicates that he is, or may be in jeopardy of shortly becoming, mentally unfit to engage in the practice of law.

(5) If for any reason respondent severs his present relationship with [W], M.D., he shall immediately make written report to the Office of the Secretary of that fact and the circumstances causing the same, together with the identification and location of another physician quali-fied as a psychiatrist who has been fully informed of the terms of this probation and has agreed to serve as a successor supervising psychiatrist in accordance with the same.

(6) Respondent shall furnish, at any time it may rea-sonably be requested, his written authorization for any health care agency or agent to furnish to the Office of the Secretary complete records of and information as to any mental health or underlying medical care services which may have been provided respondent.

(7) At the conclusion of the prescribed period of pro-bation, respondent shall apply for termination of probation, in accordance with section 89.294, Disciplinary Board Rules.

It is further ordered that the respondent shall pay the expenses of investigating and prosecuting this matter pur-suant to Rule 208(g)(1), Pa.R.D.E.